NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERENCE BREWER, | Civil Action No. 14-6886 (PGS) |
| Petitioner, | |
| v. | **OPINION** |
| STEPHEN D'ILIO, ET AL., | |
| Respondent. | |

## SHERIDAN, District Judge

Petitioner Terence Brewer, a convicted criminal in the State of New Jersey, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed by the State for murder, robbery, and unlawful possession of a firearm. Respondents have filed a Response, ECF No. 13. Petitioner did not file a Reply. The Court has considered the parties' submissions, as well as the relevant records of this case. For the reasons stated below, the Court denies the Petition.

### I.  BACKGROUND

The charges against defendant arose from incidents occurring during the afternoon of July 21, 1998 on Centre Street in Trenton, New Jersey.[1] There was conflicting evidence produced at trial. Ahmad Harris testified that Petitioner robbed him of cash, a gold chain, and drugs at gunpoint during an attempted drug transaction between Harris and Petitioner in a driveway off Centre Street.

---

[1] The Court relies on the findings of fact as recited by the New Jersey appellate court in Petitioner's PCR appeal. *See State v. Brewer*, No. A-6280-10T1, 2013 WL 6508806 (N.J. Super. Ct. App. Div. Dec. 13, 2013) ("*Brewer II*").

Petitioner then fled, followed by Harris, who picked up a bottle while yelling that he had been robbed. During the chase, Petitioner was riding a bicycle and pointed his handgun at Harris. As Harris reached Broad Street, he saw his friend, Andrew Powell, running from Centre Street toward Petitioner. When Powell was four to five steps from Petitioner, Petitioner shot Powell twice. Harris later identified Petitioner at police headquarters, as well as the gun Petitioner used to rob him.

An eyewitness to the shooting, Samuel Johnson, stated he was driving home from work at approximately 4:00 p.m. when he saw two males being chased by a man holding a bottle in his hand at the intersection of Ferry and Broad Streets. Johnson identified Petitioner, who was pushing a bicycle, as one of the men being chased and Ray Carter as the other. Johnson stated that Harris raised the bottle as if to strike Petitioner and said to "give it up." Johnson then saw Petitioner reach into his waistband, pull out a handgun, and point it at Harris, causing Harris to step back. Petitioner then continued on the bicycle toward Broad Street.

Johnson decided to follow Petitioner and saw Harris continue his pursuit of Petitioner, but at a distance. When Petitioner reached Broad Street, he dropped the bicycle and began walking toward Market Street. Johnson then saw three males, including Harris, running from Centre Street toward Petitioner. Johnson heard Harris yell to the other two men, one of whom was Powell, that Petitioner's gun was a fake. Petitioner then pulled the gun from his waistband and shot Powell, who had confronted Petitioner. Powell was about one to two feet away from Petitioner when he was shot. Johnson stated that Powell had nothing in his hands at the time. Powell died from gunshot wounds.

Johnson followed Petitioner and Carter, and saw Carter enter a residence on Clay Street. He had also seen Petitioner discard clothing while walking toward the Clay Street area. Johnson went back to the scene of the shooting, informed the police about his observations, and led them

back to the Clay Street residence. When the police arrived, Carter was on the porch and informed the police that Petitioner, his brother-in-law, was inside the house. Carter consented to a search of the house. Police found Petitioner in the attic, breathing heavily and sweating. When taken outside, Johnson identified Petitioner as the shooter.

Petitioner testified to a different version of the incident. Petitioner admitted that he went to the Centre Street area with Carter in an attempt to purchase drugs from Harris. Carter waited for him at the corner of Centre and Broad Streets. However, when Harris took him into the driveway, Harris pulled a handgun and demanded money. After dropping the money on the ground to distract Harris, Petitioner attacked Harris, grabbed the money and gun, and ran from the driveway. As Harris began to scream, Petitioner saw two males running towards him, so he ran out of the alley towards Ferry Street.

Petitioner stated that during the chase, Harris tried to hit him with a bottle and Petitioner pulled out the gun to make him back off. As Petitioner continued toward Broad Street, he saw Powell holding Carter up against a wall. Powell then approached Petitioner, reaching behind his back and pulling out what Petitioner thought was a gun. Petitioner ducked down and shot Powell twice. Petitioner denied taking any drugs, money or jewelry from Harris.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a claim has been adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

### III. DISCUSSION

The Petition raises the following six grounds for relief: (1) because the juror who was excused during deliberations was neither ill nor unable to continue under R. 1:8-2(d), her removal and replacement with an alternate juror violated defendant's right to due process of law and a fair

trial by an impartial jury; (2) defendant's convictions for robbery and felony murder must be reversed because inadequate instructions on robbery on a theory of attempted theft deprived defendant of the right to due process of law and a fair trial; (3) the verdict sheet improperly prevented the jurors from considering passion/provocation manslaughter unless they had first acquitted defendant of murder, in violation of his right to due process of law and a fair trial; (4) defendant's extended term of life imprisonment for robbery was not subject to the No Early Release Act; (5) the indictment should have been dismissed in its entirety; and (6) defendant was denied the effective assistance of trial counsel in violation of the United States and New Jersey constitutions. The Court rejects these claims.

### A. Grounds Three and Four

In Ground Three, Petitioner asserts that the verdict sheet and the trial court's instructions improperly prevented the jury from considering passion/provocation manslaughter unless they had first acquitted him of knowing and purposeful murder. In Ground Four, Petitioner argues that his Graves Act[2] extended term of life imprisonment for robbery was not subject to New Jersey's No Early Release Act.[3] Petitioner raised both of these issues in his direct appeal and was successful. The Appellate Division agreed with Petitioner's arguments and granted relief; specifically, the court vacated Petitioner's conviction for knowing and purposeful murder and remanded the matter for re-sentencing on the robbery count.[4] *See State v. Brewer*, No. A-924-02T4, slip op. at 8-16 (N.J. Super. Ct. App. Div. Mar. 30, 2004) ("*Brewer I*"), ECF No. 1 at 34-42. This Court cannot grant any further relief than what the State court has already provided by corrected the alleged

---

[2] N.J. STAT. ANN. 2C:43-6(c).
[3] N.J. STAT. ANN. 2C:43-7.2.
[4] The State subsequently dropped the murder charge. Though Petitioner appealed his amended sentence, Petitioner has not challenged the sentence imposed on remand in the present Petition.

5

errors. These claims are therefore moot and are not justiciable. Accordingly, Grounds Three and Four are dismissed.

**B. Replaced Juror**

Petitioner argues that the removal and replacement of a juror after deliberations had begun violated his right to due process and a fair trial. Jurors were permitted to take notes in court-provided notebooks, but were instructed not to take any notes home and not to conduct any independent legal or factual research. *Brewer I* at 20, ECF No. 1. In the course of deliberations, a juror informed the court that another juror, who was a law student, had written down the questions on the jury verdict sheet and had done legal research on the case during a break in deliberations. *Id.* When the jury returned to resume deliberations the following day, the juror was isolated from the other jurors and the judge questioned each of the other jurors individually. *Id.* Three jurors reported that they saw the juror copying the verdict sheet. *Id.* at 20-21.

The judge then questioned the juror, who admitted that she took notes of the verdict sheet but denied taking the notes home. *Id.* at 21. After the notes could not be found in her court-provided notebook, the judge questioned her again and she stated that if the notes were not in her notebook, she did not know where they were. *Id.* The judge found the juror's explanations "unsatisfactory" and the other jurors "extremely extraordinarily credible" and concluded that it was likely that the juror removed the materials from the jury room for an improper purpose. *Id.* He therefore removed the juror and an alternate juror was selected to take her place. *Id.* The judge asked the remaining jurors whether they could be fair and impartial and start deliberations anew without regard to the deliberations that had already occurred and the jurors answered affirmatively. *Id.* at 21-22. The

reconstructed jury was instructed to "set aside and disregard any and all past deliberations." *Id.* at 22. Deliberations proceeded and the jury reached a verdict the following day. *Id.*

The Appellate Division analyzed Petitioner's claim under New Jersey law and concluded that the trial court did not violate Petitioner's constitutional right to a fair trial and did not abuse its discretion by replacing the juror. *Id.* at 22-26. This Court will not review the Appellate Division's application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (internal quotations and citation omitted). Petitioner claims, however, that the replacement of the juror violated his due process rights and right to a fair trial. "[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Riggins v. Nevada*, 504 U.S. 127, 149 (1992). In the field of criminal law, "the category of infractions that violate 'fundamental fairness' [is defined] very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443 (1992). In order to satisfy due process, Petitioner's trial must have been fair, but it need not have been perfect. *United States v. Hasting*, 461 U.S. 499, 508-09 (1983) ("[T]here can be no such thing as an error-free, perfect trial, and [] the Constitution does not guarantee such a trial.").

The Appellate Division determined that the trial court "ensured that the jury had not been tainted or prejudiced by interviewing each juror, separately, and ensuring that each could be fair and impartial." *Brewer I* at 26. Petitioner has not shown that the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established federal law. Through its *voir dire* and specific instructions given to the jury, which the jury is presumed to have followed, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), the trial court took appropriate precautions to

preserve fair deliberations and Petitioner's right to a trial by an impartial jury. *See Smith v. Phillips*, 455 U.S. 209, 217 (1982) (though not infallible, *voir dire* and protective instructions from the trial judge are "[t]he safeguards of juror impartiality"). Petitioner has not identified, and this Court has not found, relevant Supreme Court authority that is contrary to the state court's decision or that the state court unreasonably applied. Accordingly, Ground One will be denied.

### C. Robbery and Felony Murder Convictions

In Ground Two, Petitioner argues that his convictions for robbery and felony murder must be reversed because "inadequate instructions on robbery on a theory of attempted theft deprived defendant of the right to due process of law and a fair trial." Pet., ECF No. 1 at 8. Specifically, Petitioner asserts that because he was acquitted of theft but convicted of robbery and felony murder on a theory of attempted theft, the court should have given a "correct and complete" definition of attempt under N.J. STAT. ANN. 2C:5-2.

Petitioner raised this issue on direct appeal. The Appellate Division analyzed the claim as follows:

> Defendant's argument fails for the simple reason that it assumes verdicts must be consistent. However, it is well settled that inconsistent verdicts can be upheld if there is sufficient evidence "to support a conviction on the substantive offense beyond a reasonable doubt[.]" *State v. Grey*, 147 N.J. 4, 10 (1996); *State v. Petties*, 39 N.J. 310, 319 (1995); *State v. Pleasant*, 313 N.J. Super. 325, 336 (App. Div. 1998), ("inconsistent verdict in a criminal trial is not a 'basis to set aside a jury's determination of guilt"), *aff'd on other grounds*, 158 N.J. 149 (1999). Further, "[r]eview of the sufficiency of the evidence on the guilty verdict is independent of the jury's determination that evidence on another count was insufficient." *Petties, supra*, 139 N.J. at 319. The rule permitting inconsistent verdicts "should apply when the reason for the inconsistent verdicts cannot be determined. In such cases, [an appellate court] should not speculate as to whether the verdicts resulted from jury lenity, compromise, or mistake not adversely affecting the defendant." *Grey, supra*, 147 N. J. at 11. *Accord United States v. Powell*, 469 U.S. 57, 65-66, 105 S. Ct. 471, 476-77, 83 L. Ed. 2d 461, 468-69 (1984) (such an assessment of the reason for a jury's inconsistent verdicts would be based

either on "pure speculation, or would require inquiry into the jury's deliberations that courts generally will not undertake").

To summarize, the United States Supreme Court has held

> inconsistent verdicts – even verdicts that acquit on a predicate offense while convicting on the compound offense – should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then, through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the Court's instructions, most certainly has occurred; but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

[Powell, supra, 469 U.S. at 65, 105 S. Ct. at 476-77, 83 L- Ed. 2d at 468-69 (internal
citations omitted).]

In this case, Harris testified at length and in detail regarding the jewelry (i.e., gold chain) and currency (a couple of hundred dollars) that defendant stole from him after the pair entered the driveway to the parking lot to consummate the drug transaction. Although neither the chain nor any currency was found either on defendant when he was arrested or along the route defendant took from the murder scene to his sister's house on Clay Street, Harris's testimony clearly provided sufficient evidence to support a conviction for theft.

Because the evidence supported guilty verdicts of robbery and felony murder based on a completed, rather than inchoate, theft, the fact that the jury was not charged on "attempt" does not warrant reversal of these convictions. Rather, the jury could well have properly found defendant guilty on the robbery and felony murder charges, and "through mistake, compromise, or lenity," acquitted him of theft. Given that the jury's rationale in reaching its verdict is unclear, and that an appellate court should

      neither speculate on that rationale, nor inquire into the jury's deliberations,
      we are satisfied that those convictions must stand.

*Brewer I* at 17-19.

  Petitioner is not entitled to federal habeas relief on this claim. The Appellate Division properly relied on, and reasonably applied, *U.S. v. Powell*, 469 U.S. 57 (1984), which held that verdicts are not subject to review merely because they are inconsistent. 469 U.S. at 64-69. Moreover, as the Appellate Division concluded, there was sufficient evidence presented at trial to convict Petitioner on those counts for which the jury found him guilty. Petitioner has not shown that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts. Accordingly, Ground Two will be denied.

### D. Dismissal of the Indictment

  In Ground Five, Petitioner asserts that the indictment should have been dismissed in its entirety. Petitioner has not asserted any facts in support of this claim, nor has he asserted a violation of any federal or constitutional right. *See* Pet., ECF No. 1 at 14-15. Petitioner merely recites legal standards regarding dismissal of indictments under New Jersey law without stating any grounds upon which the state courts should have dismissed the indictment. *Id.*

  Petitioner also has not pointed to any state court decision on this issue that was contrary to, or an unreasonable application of, clearly established federal law. In his PCR petition, Petitioner raised this claim and asserted that much of the testimony of the detective who testified before the grand jury, who was the only proffered witness, amounted to hearsay. ECF No. 13-20 at p. 16. This was the only factual basis asserted for the claim, though Petitioner did not identify any purported hearsay in the detective's testimony. The Appellate Division denied Petitioner's PCR appeal without discussing this claim, finding it to be without sufficient merit to warrant discussion.

*See Brewer II*, 2013 WL 6508806 at *5. Even liberally construing the Petition and presuming that this is the claim that Petitioner intends to bring before this Court, Petitioner has not raised any argument and has offered no facts to call into question the Appellate Division's decision. Moreover, this Court does not find that the appellate court's determination is contrary to federal law. *See e.g., Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) (indictments may be returned on hearsay); *Costello v. United States*, 350 U.S. 359, 362–64 (1956) (same). Petitioner therefore has not met his burden to demonstrate his entitlement to habeas relief on this claim. Accordingly, Ground Five will be denied.

### E. Ineffective Assistance of Counsel

In Ground Six, Petitioner asserts that he was denied the effective assistance of trial counsel in violation of the United States and New Jersey constitutions. As with Ground Five, however, Petitioner has not alleged any facts or raised any arguments in support of this claim. *See* Pet., ECF No. 1 at 17. Petitioner states that he raised this claim in his PCR petition, in which he argued that counsel was ineffective for failing to call a witness, Ray Carter, in his defense, and for failing to cross-examine certain prosecution witnesses. *Brewer II*, 2013 WL 6508806 at *2. Liberally construing the Petition as seeking to raise the same issues here, the Court denies the claim.

#### a. Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation

fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[5] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

### b. Ray Carter

Petitioner asserts that counsel was ineffective for not calling Ray Carter as a witness because Carter would have corroborated his version of events and confirmed that Petitioner acted in self-defense. *Brewer II*, 2013 WL 6508806 at *2. Petitioner's counsel interviewed Carter in October 1999, at which time Carter gave an account that varied in some respects from the earlier statement he gave to police. *Id.* at *2-*3. In the police statement, Carter told the police that Petitioner was going to rob the drug dealers and that Petitioner had a gun; Carter later stated, however, that he did not state that Petitioner was going to rob drug dealers. *Id.* In both statements, Carter reported that Petitioner shot the victim after the victim reached behind his back. *Id.* The PCR court concluded that counsel's decision not to call Carter at trial was a strategy decision and that counsel was not ineffective for failing to call on Carter to present both incriminating and

---

[5] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

exculpatory evidence against Petitioner. *Id.* at 3. The Appellate Division affirmed and addressed the claim as follows:

> In order for defendant to obtain collateral relief based on ineffective assistance grounds, he is obliged to show not only that counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674, 693 (1984); *see also State v. Fritz*, 105 N.J. 42, 67 (1987) (adopting the *Strickland* standard in New Jersey).
>
> "[T]he right of an accused to present witnesses in his own defense 'is a fundamental element of due process of law." *State v. Garcia*, 195 N.J. 192, 202 (2008) (quoting *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S. Ct. 646, 653, 98 L. Ed.2d 798, 810 (1988)). Under the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution, a defendant is guaranteed "nothing less than 'a meaningful opportunity to present a complete defense.' " *Id.* at 201–02 (quoting *State v. Garron*, 177 N.J. 147, 168 (2003), *cert. denied*, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed.2d 1204 (2004)).
>
> A defendant's right, however, is subject to the legitimate interests of the court, including its role as "gatekeeper for the admission or exclusion of evidence." *State v. Rosales*, 202 N.J. 549, 561–62 (2010); *see also Garcia, supra*, 195 N.J. at 202–03 (citing *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046, 35 L. Ed.2d 297, 309 (1973)). "[A] defendant does not have a right to call a witness who will offer irrelevant [or inadmissible] testimony." *Id.* at 203 (citing *Crane v. Kentucky*, 476 U.S. 683, 689–90, 106 S. Ct. 2142, 2146, 90 L. Ed.2d 636, 644 (1986)).
>
> Evidence is relevant if it has "a tendency ... to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. The inquiry "focuses upon the logical connection between the proffered evidence and a fact in issue." *Verdicchio v. Ricca*, 179 N.J. 1, 33 (2004) (citations omitted) (internal quotation marks omitted).
>
> Here, defendant pursued a trial strategy in which he claimed self-defense. Defense counsel artfully developed an opening statement, the cross-examination of relevant prosecution witnesses, defendant's own testimony, and an appropriate summation, all in an attempt to persuade the jurors that defendant was justified in shooting Powell. Carter's statement simply would not have been relevant or helpful to defendant's self-defense claim. Rather, as the PCR judge found, calling Carter "would have only served to bolster the State's theory of the case against the defendant ... [as] Carter's statement directly implicates the defendant...."

*Id.* at *4.

Petitioner has not shown that the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established federal law. The court identified and applied the proper *Strickland* standard and found, essentially, that Petitioner was not prejudiced by counsel's strategic decision not to call Carter as a witness. Even if Carter would have corroborated some elements of Petitioner's version of events, his testimony was, as the state courts found, also incriminating. Moreover, had Carter offered testimony that contradicted or conflicted with the account he relayed in his earlier police statement, he would have been subject to impeachment and his testimony would have raised credibility issues before the jury. In sum, Petitioner has not shown a reasonable probability that the outcome of his trial would have been different had counsel called Carter as a witness. Nor has Petitioner established that counsel's strategic decision fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 689 (Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (internal quotations and citation omitted). Accordingly, the Court denies habeas relief on this claim.

### c. Cross Examination of Witnesses

Petitioner argues that his counsel was ineffective for failing to cross-examine certain prosecution witnesses. The PCR court found that counsel's choice not to cross-examine some witnesses was a tactical decision and the Appellate Division affirmed. *Brewer II*, 2013 WL 6508806 at *3. Specifically, the Appellate Division stated:

> With regard to the defense counsel's alleged failure to cross-examine certain police officers, the PCR judge scrupulously analyzed the testimony, and determined that trial counsel made a tactical decision to only cross-examine those officers who responded to the scene of the shooting and who searched the area for evidence. The court reasoned that counsel did so "in an attempt to attack the credibility of Harris by pointing out that no officers found gold

> chains, drugs or currency." The judge found that the testimony of the other five officers was either not relevant to defendant's self-defense theory or related to matters that defendant conceded were true.
>
> After a careful review of the record, we agree with Judge Neafsey that defendant failed to make a prima facie showing of ineffective assistance of counsel under *Strickland* sufficient to warrant a new trial or, alternatively, an evidentiary hearing.

*Id.* at \*5. Petitioner has failed to demonstrate that the Appellate Division's determination was contrary to or an unreasonable application of federal law or that it was based on an unreasonable determination of the facts. Specifically, Petitioner has not overcome the presumption that counsel's decisions as to which witnesses to cross-examine and which ones did not warrant cross-examination were part of a sound trial strategy. Moreover, he has not identified what testimony counsel should have elicited from those witnesses whom counsel did not cross-examine. Petitioner also has failed to establish prejudice as he has not shown that the outcome of his trial would have been different if those cross-examinations had occurred. The Court therefore denies relief on Ground Six.

### IV. CERTIFICATE OF APPEALABILITY

Lastly, the Court denies a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A Petitioner satisfies this standard by demonstrating that jurist of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Petitioner has failed to make a substantial showing

of the denial of a constitutional right. Thus no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V. CONCLUSION

For the reasons set forth above, the Petition is DENIED and the Court denies a certificate of appealability.

Date: 2/14/18

_____
**Peter G. Sheridan**
**United States District Judge**